**William L. COWDEN, Appellant,.**

v.

**Pauline SCHUBERT, a feme sole, Appellee.**

**No. 10825.**

Court of Civil Appeals of Texas.

Austin.

March 1, 1961.

H. A. Triesch, New Braunfels, Bert W. Thompson, San Antonio, for appellant.

Mark V. Fuchs, Schleyer & Bartram, J. C. Reagan, New Braunfels, for appellee.

GRAY, Justice.

Appellant, William L. Cowden, sued appellee, Mrs. Pauline Schubert, in trespass to try title for title and possession of 6.74 acres of land. Appellee answered and interposed a plea of ten years peaceable and adverse possession.

A jury trial was had and in answer to the one special issue submitted the jury found that appellee and her deceased husband had held peaceable and adverse possession of the land in controversy for a period of ten consecutive years prior to the filing of the suit on April 4, 1958. On this finding a judgment was rendered awarding the land to appellee.

Appellant here presents four points. These are to the effect that the trial court erred in refusing his motion: for an instructed verdict; for judgment non obstante veredicto, and for a new trial because there is no evidence that appellee held adverse possession of the land, and that the trial court erred in submitting issue one because there was no evidence, or insufficient evidence, to raise the issue.

In 1951 appellant purchased a tract of land in Comal County from Paul Westerfer. The deed called for 227.4 acres of land and it appears that the 6.74 acres in controversy here constitutes a part of that tract. However, the 6.74 acre tract is separated from the other land by the Fisher Store—New Braunfels Road and lies north and east of this road. In 1933 appellee and her husband, Hugo Schubert, purchased 478½ acres of land lying generally north of the Fisher Store—New Braunfels Road and generally across said road and opposite appellant's land. In 1934 Hugo Schubert assisted by Melvin and Raymond Westerfer fenced the 478½ acre tract and included within the inclosure the 6.74 acre tract. This small tract lies in a triangle on the north side of the above road and is bounded on the north and the east by the 478½ acres. The fence built by Hugo Schubert was built along the north boundary of the said road and thereby the 6.74 acre tract was enclosed

with the 478½ acres. At the time there was no substantial fence around the 6.74 acres and it appears that it was merely an open pocket on the road. However it appears that the land had at one time been under fence.

In 1934 and prior thereto Paul Westerfer lived on the land that he later sold to appellant and at the trial he testified that in 1934 Hugo Schubert came to him and asked if he could put the fence along the road and that he told him he could if he would promise to buy the 6.74 acres later on. He was asked and testified:

"Q. Now, when he said that he wanted to put a fence on your property, what did he mean, if you know? A. Well, he said he could make a better fence along the road on my property.

"Q. State whether or not he asked you whether he could fence the property along the road. A. Yes, if I give him permission, so I give him permission, for that reason, that later on he would buy it from me, and then several years later I went by to see him. He was cutting cedar and I said, 'How about buying that property? You have had it under fence here long enough,' and he said, 'Well, I am sort of sick, but as soon as I get well, I will buy it from you.'

"Q. Did you ever consummate any kind of sale? A. No. He got worse, and finally died, and that was the end of it."

Paul Westerfer also said that he talked to Hugo Schubert a second time and that Melvin Westerfer was present. He said:

"A. Yes, I came over there and asked him a second time when they were working on that fence, and told him, I said, 'You still remember about your promise you would buy that land from me?' And he said, 'Yes, that was the agreement.' That was the

reason I gave him permission to fence it."

He said that about a year before Hugo Schubert died he talked to him about buying the land. He said:

"A. Well, he said, 'As soon as I get well and will be all right again, I will buy it from you. We will make the same kind of deal,' so I said okay, so I didn't bother him any more. He got worse and worse, and he finally died."

Hugo Schubert died in 1947.

Melvin Westerfer testified that he and his brother Raymond worked for Hugo Schubert in 1934 and helped build the fence around the 478½ acre tract and that when they reached the 6.74 acre tract his Uncle Paul Westerfer had a conversation with Hugo Schubert but he was not in their presence and did not hear the conversation. He said after the conversation Hugo Schubert came and told him and his brother to go ahead and build the fence enclosing the 6.74 acre tract.

Raymond Westerfer did not testify. Appellee was not present at any of the above conversations and denied any knowledge of the agreement until in 1955.

Appellee testified that after the fence was built in 1934 that she and her husband claimed everything under the fence "and I still do." She said the property was used for grazing livestock, that it was leased out for hunting and that cedar posts were cut on the 6.74 acre tract. She said that no person other than she and her husband has used or attempted to use it. She probated Hugo's will but did not include the 6.74 acres in the inventory which she signed. She said the inventory was prepared by her attorney and that she knew nothing about those matters.

Other witnesses testified to the fencing of the 6.74 acres by Hugo Schubert, to its use by him and after his death by appellee.

The Schuberts lived on their property until Hugo's death and thereafter appellee continued to reside there. Paul Westerfer said he visited Hugo while he was sick and that after his death he helped appellee with her stock and in her field. He said he did not talk to appellee about the 6.74 acres of land until 1955 and said:

"A. Well, I asked her one time, 'Why don't you turn it over to Mr. Cowden, because I pay taxes all my life on it since I had it, and so did Mr. Cowden,' and she said, 'Well, I will give it up if the court decides it. That is the court's business.' That was what she said."

There is evidence that suggests that the 6.74 acre tract had very little value prior to the beginning of talk about building the Canyon Dam. Paul Westerfer said that talk was the reason he sold out.

In his charge to the jury the trial court defined "peaceable possession," "adverse possession," "claim of right," instructed the jury that peaceable and adverse possession need not be continued in the same person but that when held by different persons successively there must be privity of estate between them and defined "privity of estate."

The evidence shows without dispute that in 1934 the Schuberts took actual physical possession of the 6.74 acre tract by then enclosing it with a fence and thereafter they enjoyed its use to the exclusion of all other persons. It also shows without dispute that said taking of possession, fencing and use of the said land was then and at all times thereafter known to Paul Westerfer, the owner. Also that such use was open and obvious to all other persons. It may also be said that in 1934, before the fence was built, Hugo Schubert and Paul Westerfer had a conversation about fencing the land; however the testimony of Paul Westerfer is the only evidence as to what the conversation was. Appellee was not present when the conversation was had and she said she knew nothing about it. In Paul Westerfer's conversation with her in 1955, above quoted, he did not say he

told her of any agreement had with Hugo. However his testimony as to that matter is:

"Q. But you never once said to Pauline Schubert, after Hugo died, 'Pauline, I want to tell you something. Hugo and I had an agreement about that fence. We didn't talk about it for thirteen years—' A. No, no.

"Q. You never told her anything about it, did you? A. No.

"Q. You knew she had it under fence and was using it? A. Yes, I knew it.

"Q. You knew she was claiming it as against the whole world, didn't you? A. Well, I didn't have much use for it.

"Q. That is right, but you knew she was claiming it and using it, putting her stock on it and hunting on it and leasing it for hunting, and you never said one word, did you? A. No.

"Q. In 1951, you sold it? A. Yes.

"Q. You sold it to Cowden. Now, on the day that you sold it to Cowden, did you go and talk to Pauline Schubert and mention it to her, some thirty years afterwards? A. No.

"Q. Did you give her a chance to make good the agreement you said you had with Hugo about the property? A. I told her later on.

"Q. Later on? A. Yes, sir.

"Q. In 1955, four years after you sold this property and got your money for it, that was when you went and talked to Pauline Schubert for the first time, isn't it?"

He explained: "Well I thought she knew about it."

It is appellant's contention that Hugo Schubert fenced the land under an agreement with Paul Westerfer that he would buy it, that the possession was permissive, was in recognition of Paul Westerfer's title, was not taken under any claim of right and was not hostile for which reasons there was no taking of possession with intention by Hugo Schubert to claim the land as his own.

Appellant's points simply present matters of evidence and since the above contentions are presented by the testimony of Paul Westerfer, the warrantor in the deed to appellant, such testimony merely raised an issue of fact for the jury. Mosley v. Gulf Production Co., Tex.Civ.App., 111 S.W.2d 726, Er. dism. The circumstances above related and especially Paul Westerfer's long acquiescence in the use of the land were matters the jury could consider in deciding the issue of entry under a claim of right. In this connection the evidence shows that after Hugo Schubert's death in 1947 appellee took over the use and enjoyment of the land and even if Hugo agreed he would buy the land when he got well, he died in 1947 and thereafter Paul Westerfer never mentioned the conversation and agreement to appellee until in 1955, approximately three years before this suit was filed.

The question of the intent of Hugo Schubert in taking possession of the land was an issue for the jury. 2 Tex.Jur.2d 183, Sec. 89. Under the evidence in this record the contention of appellant that the use of the land by the Schuberts was permissive presented an issue of fact for the jury. Crandell v. Garza, Tex.Civ.App., 265 S.W.2d 846. Er. ref., n. r. e. This is true even though it be said that Paul Westerfer's testimony is contradicted by circumstances only. With the question of intent and permissive use determined by the jury's answer there remains only the question: Is the evidence sufficient to support the jury's finding of peaceable and adverse possession of the land for a period of ten successive years? We have stated the evidence supra and in our opinion it is

sufficient. Moran v. Moseley, Tex.Civ. App., 164 S.W. 1093.

Appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.